IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NARICA HAMILTON              :

                                :

   v.                         :   Civil Action No. DKC 17-2300

                                :

PRINCE GEORGE'S COUNTY POLICE
DEPARTMENT, et al.        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is the motion to dismiss, or in the alternative, for summary judgment filed by Defendant Prince George's County. (ECF No. 14). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.

Defendant's motion is confusing, to say the least. While counsel has purported to articulate the proper standards for either a motion to dismiss or for summary judgment, the memorandum is hopelessly jumbled. The discussion meanders from failure to ALLEGE something, to inability to PROVE something. It is not this court's role to parse the arguments in this fashion.

Plaintiff counsel did little better in pleading and arguing Plaintiff's case. The complaint was not a "short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), but rather a long and unwieldy document which failed appropriately to explain the

events giving rise to Plaintiff's claims. Although counsel recognized the applicability of Fed.R.Civ.P. 56(d), they failed to file the Rule 56(d) affidavit. In several instances, counsel advances arguments in response to Defendant's motion that contradict the complaint. Counsel would be well advised to file an amended complaint.

Given the deficiencies on both sides, the pending motion will be treated as a motion for summary judgment in its entirety. It will be granted as to the state law claims but denied as to the federal claims.

## I.    Background

### A.    Factual History[1]

Prince George's County Police Department hired Plaintiff NaRica Hamilton in 2006. At all relevant times, Plaintiff was the only female in her unit, and her immediate supervisor was Sergeant Gerald Manley, a male. Prior to November 12, 2015, Plaintiff always received satisfactory or better on her performance reviews. (ECF No. 17-3 ¶¶ 1, 3, 4).

> While under Sergeant Manley's supervision,
> [Plaintiff] was routinely subjected to
> verbal harassment. This harassment included

---

[1] Because of the posture of this case, the court has to determine whether the facts set forth in Plaintiff's affidavit and her supporting evidence construed in the light most favorable to Plaintiff create genuine disputes of material fact. Accordingly, unless otherwise noted, the facts outlined here are set forth in Plaintiff's affidavit and all reasonable inferences are drawn in her favor.

> berating [her] in front of other members of
> [her] squad and/or [her] superior officers .
> . . . and sharing private information that
> should have only been shared with [her]
> supervising officers, and referring to [her]
> by [her] first name only[.]

(ECF No. 17-3 ¶ 5). The parties also agree that Sgt. Manley listened to radio shows at work which were offensive to women and minorities. (ECF No. 14-1 ¶ 74). On October 7, 2015, Plaintiff expressed her concern about the discrimination she was experiencing to her Lieutenant, Lt. Popielarcheck. On October 8, she emailed a union shop steward about the discrimination. On October 15, at a squad meeting, Sgt. Manley mocked and humiliated Plaintiff for asking a question. He did not treat anyone else that way. On October 22, Plaintiff filed a formal complaint with the police department. (*Id.* ¶¶ 6-10).

On October 26, Plaintiff found out she was pregnant, and her doctor told her that she needed to be placed on light duty because of complications from the pregnancy. Plaintiff requested an accommodation to ensure she did not have to a) stand for long periods, b) drive more than 30 miles each day, or c) lift more than twenty pounds. The request was granted on November 2, and Plaintiff was transferred to the Records Department. Even though Plaintiff was not supposed to drive other than from home to work and back, she was ordered to drive

to the station on November 10, 11, and 12. (ECF No. 17-3 ¶¶ 12-14).

Plaintiff found out that she had had a miscarriage on November 14 and underwent a related surgical procedure on November 15. Plaintiff was on leave from November 15 until December 30. When she returned, "Sergeant Manley continued to make offensive and derogatory comments to [her] and continued to treat [her] in a discriminatory and hostile manner." (ECF No. 17-3 ¶ 19). She was then granted a transfer request to a patrol assignment and involuntary reassigned to the night shift. (*Id.* ¶ 20).

**B.  Procedural Background**

On June 23, 2017, Plaintiff filed suit in the Circuit Court for Prince George's County, Maryland, against Prince George's County and the Prince George's County Police Department. (ECF No. 2). Plaintiff brought 16 claims under an assortment of federal and state laws alleging discrimination on the basis of sex, pregnancy, disability and related claims of retaliation. On August 11, Defendant Prince George's County removed the case. Defendant Prince George's County moved to dismiss, or in the alternative, for summary judgment on September 15. (ECF No. 14). Plaintiff responded (ECF No. 17), and Defendant replied (ECF No. 20).

## II.  State Discrimination Claims

### A.  Prince George's County Police Department

Plaintiff brought claims against the Prince George's County Police Department.   Although Defendant has not raised this issue, Fed.R.Civ.P.  17(b)(2)  states  that  a  corporation's capacity to be sued is determined by the law under which it was organized.   Pursuant to state law, the Prince George's County Charter mandates that the corporate name of the County is "Prince George's County, Maryland," and that the County shall be designated as such in all actions and proceedings touching its liabilities and duties.   Prince George's County Charter § 103. Thus, a claim against the "Prince George's County Police Department" should be brought as a claim against the county itself*.  See Hines v. French*, 157 Md.App. 536, 573 (2004). Where the county is already named in the suit, claims against the Prince George's County Police Department are properly dismissed.  *See, e.g., Dodson v. Prince George's Cty.*, No. JKS-13-2916, 2016 WL 67255 (D.Md. Jan. 6, 2016); *Stewart v. Prince George's Cty.*, No. AW-01-302, 2001 WL 759890 (D.Md. May 23, 2001).   Accordingly, the claims against Prince George's County Police Department will be dismissed with prejudice.

### B.  Local Government Tort Claim Act

Counts IX through XVI of Plaintiff's complaint assert state law claims.   (ECF No. 2 ¶¶ 109-187).   Defendant argues that

Plaintiff's state law claims are barred because she failed properly to provide notice as required under the Local Government Tort Claims Act ("LGTCA"). (ECF No. 14-1, at 15). Compliance with the LGTCA is necessary to effectuate a waiver of immunity for local governments in Maryland. Plaintiff contends that her claims are not subject to the LGTCA and that even if the LGTCA applied, she complied with the notice and timing requirements by reporting the incidents to the Maryland Commission on Civil Rights. (ECF No. 17-1, at 20-21).

Plaintiff cites to Md.Code, State Gov't § 20-903, to argue that Defendant cannot assert immunity. (ECF No. 17-1, at 20). Section 20-903 provides, "The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." Defendant is a county, and Section 20-903 of the State Government Article of the Maryland Code does not apply to counties. *See* Md.Code, State Gov't § 1-101(b), (e) (defining county and state); *see also Prince George's Cty. v. Silverman*, 58 Md.App. 41, 51-52 (1984) (explaining Defendant's status as a charter county pursuant to Article XI-A of the Maryland Constitution). Therefore, the waiver of sovereign immunity cited by Plaintiff does not apply.

The LGTCA applies to suits against Defendant, *White v. Prince George's Cty.*, 163 Md.App. 129, 141-144 (2005), and it

applies regardless of whether an action is a common law tort, constitutional tort, or a statutory cause of action. *See* Md.Code, Cts. & Jud. Proc. § 5-304(b)(1) ("*[A]n action for unliquidated damages* may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury") (emphasis added); *Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 636 (2015) ("[W]e hold that, generally, the LGTCA notice requirement applies to both state constitutional and non-constitutional tort claims for unliquidated damages."); *Hansen v. City of Laurel*, 420 Md. 670 (2011) (applying the LGTCA to a claim of discriminatory discharge).

Before bringing suit, the LGTCA requires notice "be given in person or by certified mail, return receipt requested" to an identified representative of the county. Md.Code, Cts. & Jud. Proc. § 5-304(c)(1). In the case of Prince George's County, notice should be provided to the county attorney. § 5-304(c)(3)(iii). Plaintiff did not follow these steps. Plaintiff contends that the requirement can be excused pursuant to Section 5-304(e) which provides that the notice requirement "does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) [t]he claimant's injury[.]" (*See* ECF No. 17-1, at 21).

Section 5-304(e)(1) was approved on May 19, 2016. "Local Government Tort Claims Act – Notice Requirement – Exception," 2016 Maryland Laws Ch. 624 (H.B. 637). Section 1 of the Act is codified at Md.Code, Cts. & Jud. Proc. § 5-304(e)(1). Section 2 of the Act states, "this Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act." The effective date of the act was October 1, 2016. Plaintiff's action accrued around the end of the 2015 year. (*See* ECF No. 17-1, at 16). Indeed, prior to the effective date of this act, Plaintiff filed her claims with the Maryland Commission on Civil Rights. (ECF No. 17-15).[2] Thus, Section 5-304(e)(1) does not apply to Plaintiff's claims.

Plaintiff further argues her failure to follow the notice requirement can be excused pursuant to Section 5-304(d) of the Courts and Judicial Procedure Article of the Maryland Code. (ECF No. 17-1, at 21). Section 5-304(d) states, "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for *good cause shown* the court may entertain the suit even though the

---

[2] Despite Plaintiff identifying one date in the complaint, July 21, 2016 (ECF No. 2 ¶ 6), Plaintiff's supporting documentation provides a different date, August 1, 2016 (ECF No. 17-15). It is an elementary rule of pleading that the complaint should *accurately* explain what happened and when it happened.

required notice was not given." (emphasis added). Plaintiff has "identified no circumstances preventing [her] from notifying [Defendant] of [her] grievances within the 180-day window." *Martino v. Bell*, 40 F.supp.2d 719, 722 (D.Md. 1999); *see White*, 163 Md.App. at 152 (identifying criteria to determine whether good cause can be shown for a failure to comply with the notice requirement). Plaintiff has not shown good cause for her failure to comply with the statute, and Defendant is entitled to judgment.

## III. Standard of Review

Defendant responded to the complaint by filing a muddled and disorganized motion in which it requested summary judgment even though discovery has not begun. Rule 56(d) allows district courts to deny summary judgment or delay ruling on the motion until discovery has occurred if the "nonmovant shows by *affidavit or declaration* that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d) (emphasis added). In her response, Plaintiff failed to comply with this important procedural requirement. Nonetheless, as a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986). A party, however, "cannot simply demand discovery for the sake of

discovery." *Hamilton v. Mayor & City Council of Balt.*, 807 F.Supp.2d 331, 342 (D.Md. 2011) (internal quotation marks omitted).

A nonmovant's request for discovery will be denied if the request would not affect a party's entitlement to summary judgment, *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted), and a party is entitled to summary judgment if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 250; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."

*Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

## IV. Title VII Discrimination Claims

### A. Hostile Work Environment

"To state a hostile work environment claim, [Plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Defendant's motion argues that Plaintiff cannot demonstrate that the conduct was based on gender or was severe and pervasive and that no basis exists for imputing liability to the employer. (ECF No. 14-1, at 23-24).

#### 1. Based on Gender

Plaintiff argues that she was treated differently than male colleagues and therefore established gender-based discrimination. To prevail on a gender-based claim of hostile work environment, the plaintiff must show that the mistreatment was because of the victim's gender. 42 U.S.C. § 2000e-2. "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination."

*Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

Here, Plaintiff was the only female in her squad. Plaintiff also was the only person subject to demeaning or humiliating treatment and was repeatedly subject to such treatment. The comments from the radio show were offensive to women and not men. Thus, the only woman faced mistreatment that no man faced which demonstrates mistreatment because of gender.[3]

### 2. Severe or Pervasive

A hostile work environment claim requires showing that plaintiff was subject to conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Plaintiff argues that she suffered from a pattern of mistreatment. (ECF No. 17-1, at 23-24, 28).

The severity and pervasiveness necessary to establish a hostile work environment claim relies on "[c]ommon sense, and an appropriate sensitivity to social context . . . to distinguish between simple teasing or roughhousing . . . and conduct which a

---

[3] Defendant, somewhat confusingly, discusses an internal complaint Plaintiff filed and argues that the internal complaint does not have sufficient facts to show that Plaintiff was subject to discrimination on the basis of gender. (ECF No. 14-1, at 23). This internal complaint is irrelevant to this action.

reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1988). Here, Plaintiff was subject to verbal harassment and demeaning treatment in front of her coworkers. Her supervisors shared personal and private information about her with her coworkers. The misconduct occurred frequently. Plaintiff has made a sufficient showing to create a dispute of material fact at this stage.

### 3. Basis for Imputing Liability

Defendant asserts that there is no basis to impute liability because it had a policy reasonably aimed to prevent harassment. (ECF No. 14-1, at 24). Plaintiff does not contest the reasonableness of Plaintiff's policy. (ECF No. 17-1, at 28). Instead, without citing any relevant law, Plaintiff responds that the harassment was done by her supervisors. (*Id.* at 25). Plaintiff appears to be asserting a case for strict liability. (*Id.*). An employer is strictly liable when supervisors take tangible employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). Tangible employment actions include "discharge, demotion, or *undesirable reassignment*." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998) (emphasis added).

Here, Plaintiff was transferred from community oriented policing to a patrol squad and moved to the night shift.

Plaintiff asserts that the change resulted in different work tasks. In other words, it was an undesirable reassignment. Defendant's motion as to Plaintiff's claim of hostile work environment will be denied.

**B.  Disparate Treatment**

Count I alleges disparate treatment on the basis of gender. Count VII alleges disparate treatment on the basis of pregnancy which, pursuant to the Pregnancy Discrimination Act, is a type of gender-based disparate treatment. *AT&T Corp v. Hulteen*, 556 U.S. 701, 719 (2009). Defendant's motion contends that Plaintiff's gender-based disparate treatment claims fail because Plaintiff did not suffer an adverse action. (ECF No. 14-1, at 18, 26). Plaintiff responds that the lower performance evaluation and reassignment constitute adverse action. (ECF No. 17-1, at 24).

"A work reassignment may constitute an adverse employment action when the change is so substantial and material that it alter[s] the terms, conditions, and privileges of employment." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016), *cert. denied sub nom. Trask v. Shulkin*, 137 S. Ct. 1133 (2017); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("[R]eassignment can only form the basis of a valid Title VII claim if the plaintiff can show the reassignment has some significant detrimental effect on her."). Plaintiff received a

transfer away from community oriented policing to a patrol unit.
She was also involuntarily given the night shift. This transfer
took her away from the community work that she enjoyed and
excelled at. At this stage without discovery and with the
paltry briefing provided by both parties, Defendant has not
demonstrated that no dispute of material fact exists.[4]

## V.    Title VII & ADA Retaliation

Title VII and the ADA prohibit employers from
discrimination against employees who oppose actions that the
respective statutes outlaw. 42 U.S.C. § 12203(a); 42 U.S.C. §
2000e-3(a)). The elements for retaliation under either statute
mirror each other and can be analyzed together. *Adams v. Anne
Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015). For
the burden-shifting framework, Plaintiff must establish: "(1)
engagement in a protected activity; (2) adverse employment
action; and (3) a causal link between the protected activity and

---

[4] Again, it is worth noting an inconsistency between the
complaint and Plaintiff's supporting documents. The complaint
asserts, "On or about December 1, 2015, Plaintiff was given an
involuntary shift change from day to night shift." (ECF No. 2 ¶
30). The same paragraph states, "Plaintiff was transferred to
the records department" leading to the logical conclusion that
she was transferred to the records division on or about December
1. According to Plaintiff's affidavit, she was transferred to
the records division around November 2. She went on medical
leave from the middle of November until December 30. When she
returned, she then requested a transfer, and, it was that
transfer which entailed working the night shift. (ECF No. 17-
3). Counsel may need to amend the complaint to ensure the
complaint and any supporting evidence are consistent.

the employment action." *Coleman*, 626 F.3d at 190.  Defendant

argues that Plaintiff did not engage in protected activity, did

not suffer an adverse action, and that Plaintiff cannot raise an

inference of discrimination.  (ECF No. 14-1, at 25-27).

### A.    Protected Activity

For Title VII purposes, protected activity is conduct

"oppos[ing] any practice made an unlawful employment

practice[.]"  42 U.S.C. § 2000e-3(a)).  Protected activity is

expansive and "encompasses utilizing informal grievance

procedures as well as staging informal protests and voicing

one's opinions in order to bring attention to an employer's

discriminatory activities." *Laughlin v. Metro. Wash. Airports*

*Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).  At a minimum, to

qualify as protected activity, a person must attempt to assert

federal rights against discrimination. *See Treglia v. Town of*

*Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  Plaintiff argues that

she made a series of informal complaints which are protected

activities.  (ECF No. 17-1, at 29).

Under Title VII, complaints are protected activity when

"the employee 'communicates to her employer a belief that the

employer has engaged in . . . a form of employment

discrimination.'" *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173

F.Supp.3d 242, 248 (D.Md. 2016) (quoting *Crawford v. Metro.*

*Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009)).

Here, Plaintiff filed an internal complaint stating that she had been subject to "discrimination," that her "work environment [was] . . . hostile," that her supervisor was "sexist," that her supervisor was "demeaning [her]," and that she was "uncomfortable" because her supervisor always reacted to her "with prejudice." (ECF No. 14-15). Informal complaints are not done by lawyers and do not need to use legally actionable words or cite specific statutes. It is sufficient to state generally that a person is a victim of discrimination. *See Okoli v. City of Balt.*, 648 F.3d 216, 224 (4th Cir. 2011) ("Here, it was enough for [plaintiff] to twice complain of 'harassment[.]'"). Plaintiff's informal complaint qualifies as a protected activity.

A request for accommodation is paradigmatic protected activities for ADA purposes. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001). Here, Plaintiff made a request for an accommodation in mid-October. (ECF No. 2 ¶ 23). Thus, she also engaged in protected activity for the purposes of her ADA retaliation claim.

### B. Adverse Employment Action

Adverse employment action refers to acts that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57

17

(2006) ("*Burlington N.*").  In *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011), the United States Court of Appeals for the Fourth Circuit concluded a change in responsibilities from a mechanic on an assembly line to a largely janitorial role was an adverse action for the purposes of a retaliation claim. Here, as in *Hoyle*, Plaintiff was moved from her desired work to a different role.  This alone constitutes adverse action.

### C.    Causation

"[A] plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  Close temporal proximity between a protected activity and an adverse action "tends to show causation[.]"  *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015).  Here, Plaintiff engaged in protected activity in October.  She was reassigned within a few months.  Accordingly, Plaintiff has sufficiently demonstrated causation at this stage.  As the record stands, Defendant is not entitled to judgment. Defendant's motion will be denied.

## VI. Americans with Disabilities Act Discrimination

### A.    ADA Failure to Accommodate

Counts IV and VI of the complaint bring claims for discrimination under the ADA.  (ECF No. 2 ¶¶ 61-70).  "[I]n

order for a plaintiff to establish a *prima facie* case against [her] employer for failure to accommodate under the ADA, the plaintiff must show: (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks and alterations omitted). Defendant argues that Plaintiff was not disabled and that it made a reasonable accommodation. (ECF No. 14-1, at 30–31).

### 1. Disability

Defendant argues that Plaintiff's pregnancy does not qualify as a disability citing to Plaintiff's doctor note. (ECF No. 14-1, at 29-30). Plaintiff responds that "she has a condition relating to reproductive functions, which is episodic in nature as it manifests only during pregnancy and necessitates light duty[.]" (ECF No. 17-1, at 33).

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Although pregnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability,

some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA[.]" Equal Employment Opportunity Commission, *Enforcement Guide: Pregnancy Discrimination and Related Issues*, available at https://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm#%20amer; *accord Khan v. Midwestern Univ.*, 147 F.Supp.3d 718, 723 (N.D.Il. 2015); *Lang v. Wal-Mart Stores East, L.P.*, Civ No. 13-349-LM, 2015 WL 1523094 (D.N.H. April 3, 2015); *Annobil v. Worcester Skilled Care Ctr., Inc.*, No. 11-40131-TSH, 2014 WL 4657295 (D.Mass. Sept. 10, 2014); *Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, *5 (S.D.Fl. July 25, 2012). A medical condition arising out of a pregnancy is a disability if the condition "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); 42 U.S.C. § 12102(1)(A), (2)(A).

Here, due to Plaintiff's pregnancy related complications, she was told to avoid squatting, significant driving, and lifting more than twenty pounds. She was also told to request light duty. (ECF No. 14-6). Plaintiff argues that these limitations affected her ability to perform her job. Defendant do not contest that working is a major life function. Based on the record, disputes of material fact exist as to whether Plaintiff was substantially impaired in a major life function.

## 2.   Reasonable Accommodation

Defendant argues that it "granted Plaintiff a reasonable accommodation and placed her on light-duty assignment[.]" (ECF No. 14-1).   Plaintiff asserts that although Defendant granted her an accommodation,[5] Defendant refused to honor the accommodation and that "the accommodation was truly on paper only." (ECF No. 17-1, at 34).   "Cases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior . . . . [A] court should take a 'totality of the circumstances' approach and consider whether the combination of accommodations provided by the employer was reasonable." *Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 12 (1st Cir. 2012) (internal quotation marks and alterations omitted).   Plaintiff's doctor recommended Plaintiff not have to drive more than 30 miles per day, but Defendant required Plaintiff to drive to the station on November 10, 11, and 12, 2015.   Plaintiff also says that she could have stayed with the community policing unit and did not need to be transferred to the records department. (ECF No. 17-3).   A dispute exists as to whether Defendant reasonably

---

[5] Plaintiff's complaint states on almost a dozen occasions that her accommodation was denied on November 12, 2015. (ECF No. 2 ¶¶ 24, 67, 72, 84, 95, 101, 146, 151, 163, 174, 180). Bafflingly, in response to Defendant's motion, Plaintiff stated that her accommodation was granted on November 2, 2015. (ECF No. 17-1, at 34).

accommodated Plaintiff, and, therefore, Defendant is not entitled to judgment.

## VII. Conclusion

For the foregoing reasons, the motion filed by Defendant Prince George's County will be granted, in part, and denied, in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
